UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHELLE WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:24-CV-1346 PLC |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of Social Security[1], | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Michelle White seeks review of the decision of Defendant Social Security Commissioner Frank Bisignano, denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. For the reasons set forth below, the Court reverses and remands the Commissioner's decision.

**I.  Background and Procedural History**

On July 21, 2022, Plaintiff filed an application for DIB, alleging she was disabled as of January 2, 2018, due to L4-L5 spinal stenosis with spondylolysis surgery 1/2018, arrhythmia and spasming aorta, osteopathists, depression, upper back pain associated with chest pain, carpal tunnel syndrome, fibromyalgia, memory loss, elbow, neck and shoulder pain, and Achilles tendon repair. (Tr. 112)  The Social Security Administration ("SSA") denied Plaintiff's claim initially in October 2022, and upon reconsideration in December 2022. (Tr. 111-116, 117-123)  Plaintiff filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 140-141)  The SSA granted Plaintiff's request for review and conducted a hearing in August 2023. (Tr. 67-110)

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025.  Pursuant to Fed. R. Civ. P. 25(d), he is automatically substituted as the proper party defendant in this action.

1

In a decision dated September 26, 2023, the ALJ determined that Plaintiff "was not under a disability within the meaning of the Social Security Act from January 2, 2018, through the date last insured." (Tr. 11) Plaintiff subsequently filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-7) Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## II.     Evidence Before the ALJ

Plaintiff, born May 1, 1967, testified that she lived in a modular home with her spouse. (Tr. 75-76) Plaintiff received a degree in business and administration and accounting, and further trained as a paramedic. (Tr. 78-79) Plaintiff testified that she had a valid driver's license, and drove limited distances every day, and further distances approximately once a week. (Tr. 76-77) She confirmed that she currently smoked five to seven cigarettes per day. (Tr. 78)

Plaintiff testified that she last worked at Midwest Occupational Medicine, as a paramedic stationed in a dispensary. (Tr. 80) In that position Plaintiff treated headaches and injuries, and performed hearing tests, Department of Transportation physicals, and drug and alcohol tests. (Tr. 81) Plaintiff lifted and carried more than 50 pounds in her role, and was on her feet the majority of each day. (*Id.*) Prior to that job, Plaintiff worked for Express Services as a nursing assistant in a nursing home. (*Id.*) In that role, Plaintiff took care of the personal needs for elderly patients and those who were not capable of caring for themselves. (*Id.*) This position also required Plaintiff to lift more than 50 pounds. (Tr. 82)

In response to the ALJ's question regarding why Plaintiff believed she was disabled during the relevant period of time[2], Plaintiff testified as follows:

> It's my pain….I guess, to an extent, my pain creates a limitation to what I can and cannot do.  I can pretty much—I have full function of all my limbs, especially with the spine and bowels also.  That is one of the reasons why I had to go through the surgery[3] because of this type of injury….My pain level [since Plaintiff's January 2018 surgery] has been pretty much every day at a 5 on the scale of 1 to 10…The pain is—it's from my lower back all the way to my neck.

(Tr. 83)  Plaintiff stated that by the evening, the pain in her neck moved through her arms, making holding a cup of coffee challenging at times.  (Tr. 84)  She testified that she tried to stay active, to alleviate the numbness she experienced in her arms upon waking, but that said activity led to pain later in the day.  (*Id.*)  She explained as follows:

> If I decide that I'm going to walk my dogs a quarter of a mile, which is to my driveway and back, I know that that day I'm going to pay the price.  So what I do is after I do that is I get on my inversion table.[4]  And that will relieve a lot of the pain, but it will help me to do my housework, you know, cook, take care of myself pretty much.  So it's—using that two or three times a day gets me through.

(Tr. 84-85)  Plaintiff clarified that she did not clean her entire house in one day, but rather split it into quarters to allow her enough time to sweep, lightly mop, and cook.  (Tr. 86)

---

[2] The ALJ defined the relevant time period as the period between January 2, 2018, Plaintiff's alleged onset date, and September 30, 2020, her date last insured.  (Tr. 71)

[3] Plaintiff underwent L4-5 lumbar decompression and transforaminal lumbar interbody fusion on January 9, 2018.  (ECF No. 11, P. 7)  Plaintiff acknowledged that the surgery resolved her issues with her bowels.  (Tr. 91)

[4] Plaintiff described the inversion table as follows:  "It's literally like being hung from your feet.  It's a table where you just lay your body on and you do it while you're standing up, so it makes it so much easier than having to really squat every time."  (Tr. 85)  She testified that she utilized the inversion table three times a day.  (Tr. 86)

The ALJ questioned Plaintiff with respect to her abilities on or before September 30, 2020, her date last insured. (Tr. 87) Plaintiff stated her back was not as disabling as it currently was, and that she was able to clean half of her home in a day, and stand to cook for an hour. (Tr. 87-88, 103) As far as walking, she stated she was able to walk "maybe half a mile" at that time. (Tr. 88) She further opined that in September of 2020, she was able to sit for two hours, and lift up to 20 pounds. (Tr. 89) She testified that she was able to use her hands and arms "[f]or the most part", and that there was no physical impediment to her doing so other than pain. (Tr. 90-91) She further acknowledged that prior to September 20, 2020, she was able to grocery shop for approximately an hour, and help with lawn care, including cutting the grass with a push mower, for "probably an hour". (Tr. 94-95)

A vocational expert also testified at the hearing. (Tr. 104-109) The ALJ asked the vocational expert to consider a hypothetical individual with the same age, education, and work experience as Plaintiff, with the following limitations:

> Our hypothetical individual retains the ability to do light work. But this individual can only occasionally climb ramps, stairs, ladders, ropes, and scaffolds, can occasionally balance, stoop, kneel, crouch, and crawl. And this individual can frequently reach and handle using the bilateral upper extremities.

(Tr. 106) The vocational expert opined that such an individual would not be able to perform Plaintiff's past work, but jobs existed in the national economy that such an individual could perform, such as bench assembler, light machine tender, and assembly production worker.[5] (Tr. 106-107) The ALJ then changed the hypothetical, to specify an individual who would be absent from work at a rate of three times per month on a regular basis, and/or would be off task at a rate

---

[5] The vocational expert noted that all of her proposed jobs were classified as light exertional level and unskilled. (Tr. 106-107)

4

of at least 20 percent of the workday. (Tr. 107)  The vocational expert stated such an individual would not be able to maintain the referenced jobs (or any others) in a competitive work environment.  (*Id.*)  Finally, in response to a question from Plaintiff's attorney, the vocational expert testified to her opinion that light work would be eliminated for an individual who was able to use her bilateral upper extremities only occasionally.  (Tr. 108)

### III.    Standards for Determining Disability Under the Social Security Act

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992).  Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process).  At step one, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not

5

disabled.  20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611.  At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month] duration requirement in [§ 404.1509], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611.  To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  At step three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings").  20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611.  If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process.  20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to step four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1).  *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).  At step four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611.  If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611.  At step five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to

6

other work, the claimant will be found disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g); *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523.  At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform.  *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

### IV.     The ALJ's Decision

The ALJ applied the five-step evaluation set forth in 20 C.F.R. § 404.1520 and found that Plaintiff:  (1) had not engaged in substantial gainful activity during the period from her alleged onset date, January 2, 2018, through her date last insured, September 30, 2020; and (2) through the date last insured had the severe impairments of degenerative changes to the cervical, thoracic, and lumbar spines, degenerative changes to the sacroiliac joints, and myofascial pain syndrome, that significantly limited her ability to perform basic work activities as required by SSR 85-28.[6] (Tr. 13)  At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 15-16)

The ALJ further determined that, although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms", "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not

---

[6] The ALJ noted that Plaintiff further suffered from gastroenteritis, carpal tunnel syndrome, hyperlipidemia, irregular heart rhythm, and anxiety disorder.  (Tr. 13)  The ALJ stated "there was no indication of related functional problems for a continuous 12-month period prior to the date last insured", however, and thus concluded the impairments were non-severe.  (*Id.*)

7

entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 17) In making this finding, he first detailed Plaintiff's hearing testimony, noting Plaintiff testified she "was able to walk ½ a mile, sit no more than 2 hours, and lift 20 pounds", "had issues using her hands", and "experienced symptoms of anxiety and depression and identified side effects to medication including brain fog and memory loss." (Tr. 17) The ALJ noted that despite these limitations, Plaintiff "engaged in a somewhat normal level of daily activity and interaction during the relevant period", and "[s]ome of the mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." (Tr. 20)[7]

The ALJ continued to opine that the medical evidence of record did not support that Plaintiff "was more limited than indicated in the above-established residual functional capacity during the relevant period." (Tr. 19) The ALJ explained as follows:

> The medical evidence of record does not support that the claimant was more limited in her ability to stand, walk, or lift/carry during the relevant period than accounted for in the residual functional capacity. During the relevant period, examination findings showed positive Tinel sign bilaterally, decreased grip strength, abnormal tandem walk, and myofascial tender points to palpation of the paraspinal muscles in the posterior thoracic region between her shoulder blades (Exhibits 2F at 2, 4; 3F at 9). However, in contrast with these abnormalities were normal signs including normal gait, normal movement of the extremities, normal finger-to-nose, negative Romberg, 5/5 strength, no myeloradiculopathy, normal sensation, and normal reflexes (Exhibits 2F at 2, 4, 11; 3F at 5, 9; 4F at 16, 21). Overall, these findings do not support the degree of limitation alleged by the claimant and any limitations associated with abnormal findings have been accounted for in the residual functional capacity in an abundance of caution.

(Tr. 19-20)

---

[7] The ALJ noted that his ability to assess Plaintiff's daily activities during the relevant time period was limited, as Plaintiff did not complete a Function Report. (Tr. 20)

8

The ALJ next considered the medical opinions in the record. He found unpersuasive the prior administrative medical findings of insufficient evidence, because "[w]hile these findings were possibly supported by a review and explanation of the evidence available at the time, subsequent evidence of record discussed above supports a limitation to light work with additional restrictions." (Tr. 20) He further found the discharge instructions following Plaintiff's January 2018 lumbar surgery unpersuasive, as "[t]he most reasonable inference from the context of this opinion is that it is an impliedly temporary restriction not intended to limit the claimant for more than a short period of time." (*Id.*; *see also Id.* ("As a temporary restriction, the opinion does not render complete statements as to the claimant's condition throughout the relevant period of alleged disability.")) The ALJ concluded as follows:

> In sum, the facts contained in the record do not dispute that the claimant had conditions during the relevant period, which singly or in combination, may have caused functional limitations. What the evidence suggests, however, is that the claimant's symptoms may not have existed at the level of severity asserted by the claimant's testimony at hearing and did not have the negative impact upon the claimant's ability to engage in work activity during the relevant period that has been alleged. The above residual functional capacity, as determined by the undersigned, considers the reliable evidence regarding the extent of the claimant's functional impairments.

(Tr. 21)

After "careful consideration of the entire record," the ALJ determined that through the date last insured, Plaintiff had the RFC to perform light work, with the following limitations: Plaintiff may "occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; [and] frequently reach and handle using the bilateral upper extremities." (Tr. 16) Based on the vocational expert's testimony, the ALJ found that Plaintiff had the RFC to perform jobs that existed in significant numbers in the national economy, such as bench assembler, machine tender, and assembly production worker. (Tr. 21- 22) The ALJ therefore concluded that

9

Plaintiff had not been under a disability, as defined in the Social Security Act, at any time from January 2, 2018, the alleged onset date, through September 30, 2020, the date last insured.  (Tr. 22)

V.     Discussion

Plaintiff claims the ALJ erred in determining her RFC, because substantial evidence did not exist in the record to support the RFC determination.  (ECF No. 11)  The Commissioner counters that substantial evidence supported the ALJ's RFC determination.  (ECF No. 13)

A.  Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'"  *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome."  *Id*. (internal quotation marks and citations omitted).

A court does not "'reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'"  *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)).  Therefore, the Court must affirm the ALJ's decision if "'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]'"  *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

B.  RFC Determination

10

RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1).  *See also Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations."  *Moore*, 572 F.3d at 523 (internal quotation marks and citation omitted).

The RFC "'is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities[.]'"  *Roberson v. Astrue*, 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting SSR 96-8p, 1996 WL 374184, at *3 (Soc. Sec. Admin. July 2, 1996)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."  *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (internal quotation marks and citation omitted).  *See also Gilmore v. Saul*, No. 1:19CV104 JAR, 2020 WL 5801042, at *3 (E.D. Mo. Sep. 29, 2020) (internal quotation marks and citation omitted) ("The ALJ is required to consider at least some supporting evidence from a [medical professional] and should therefore obtain medical evidence that addresses the claimant's ability to function in the workplace.").  "An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand." *Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)).

Plaintiff claims the ALJ erred in determining her physical RFC because the finding was not supported by substantial evidence. Plaintiff notes at the initial Social Security review level on October 10, 2022, Dennis McGraw, D.O., reviewed Plaintiff's file and found the "'[e]vidence in file [is] insufficient to fully determine the severity of the alleged impairments prior to' the date last insured ("DLI")."  (ECF No. 11, P. 5, quoting Tr. 114)  At the reconsideration level, Plaintiff notes

11

James Schell, M.D., reviewed the file and opined "'[t]here is not enough medical and functional evidence to identify a period of disability prior to the DLI of 9/30/2020.'" (*Id.*, quoting Tr. 119) As a result, neither of Defendant's retained medical consultants provided a medical opinion. (*Id.*)

As noted above, the ALJ found Dr. McGraw and Dr. Schell's findings "unpersuasive." (Tr. 20)  The ALJ explained that "[w]hile these findings were possibly supported by a review and explanation of the evidence available at the time, subsequent evidence of record discussed above supports a limitation to light work with additional restrictions." (*Id.*)

The regulations define "light work" as work that "requires a good deal of walking or standing, or…involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). "To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." *Id.* Further, to be capable of performing light work, a claimant must be able to stand or walk for six hours of an eight-hour workday. *Combs*, 878 F.3d at 645 n. 5 (citing *Frankl v. Shalala*, 47 F.3d 935, 937 (8th Cir. 1995)).  *See also* SSR 83-10, 1983 WL 31251, at *6 (Soc. Sec. Admin. Jan. 1, 1983) (explaining that light work involves standing or walking for "approximately 6 hours of an 8-hour workday.").

In making his determination, the ALJ factually summarized the evidence of Plaintiff's medical exams and treatment, but did not discuss or examine how such evidence supported his assessment of light exertional level capability. *Gilmore*, 2020 WL 5801042, at *4.  In particular, the ALJ did not identify the "subsequent evidence of record", unavailable to the medical consultants, that enabled him to render an RFC determination.[8]  More importantly, he did not

---

[8] The ALJ further failed to explain why any relevant medical information was unavailable to the medical consultants, even though they provided their opinions more than two years after Plaintiff's date last insured.

12

provide sufficient analysis supporting his conclusion that said evidence demonstrated Plaintiff had the ability to engage in the activities required for light work with restrictions during the relevant period. *See Noerper v. Saul*, 964 F.3d 738, 746 (8th Cir. 2020) ("There is simply no reliable evidence providing a basis for the specific conclusion that Noerper can stand or walk for 6 hours in an 8-hour workday.")  *See also Gilmore*, 2020 WL 5801042, at *4 ("Indeed, the only 'discussion' regarding Plaintiff's ability to engage in work-related activities appears to be a cursory reliance on the absence of medical opinions stating that Plaintiff could not engage in work-related activities…An absence of opinion, however, does not constitute medical evidence upon which an ALJ may base her RFC assessment.")  This failure is especially concerning here because, as Plaintiff notes, if she were limited to sedentary work, Plaintiff would meet the GRID requirements to qualify for Social Security disability benefits. (*See* ECF No. 11, P. 6, citing the medical-vocational guidelines, or GRIDS, set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2)[9]

An ALJ's RFC assessment must discuss and describe how the evidence supports each conclusion, and must cite specific medical facts and nonmedical evidence in doing so, as well as resolve any material inconsistencies or ambiguities in the evidence of record. SSR 96-8p, 1996 WL 374184, at *7.  The ALJ did not undergo this process here.  In other words, although he thoroughly summarized the medical evidence of record, the ALJ did not justify how he translated his understanding of the medical evidence into a conclusion that Plaintiff could engage in light work with restrictions.

---

[9] "The medical-vocational guidelines, or grids, are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability….If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table." *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (internal quotation marks and citations omitted).

13

The Court recognizes that an ALJ need not "in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality." *Noerper*, 964 F.3d at 746.  "Something, however, is needed," *Id.*, as an ALJ may not simply draw his own inferences about a claimant's functional abilities from medical reports. *Combs*, 878 F.3d at 646.  "Here, the absence of evidence translating the medical evidence and subjective complaints into functional limitations….leaves [the Court] unable to determine the permissibility of the Commissioner's RFC determination." *Noerper*, 964 F.3d at 747.  See also *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (internal quotation marks and citations omitted) ("While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand.")

Pursuant to 42 U.S.C. § 405(g), this Court has the power to "affirm[], modify[] or revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Upon consideration of the foregoing, the Court will remand this matter to the Commissioner to more fully identify, evaluate and supplement as necessary the medical and nonmedical evidence of record supporting either his original conclusion as to Plaintiff's RFC, or any amended RFC determination he may render.[10]

## VI. Conclusion

Accordingly, for the reasons stated above,

---

[10] On remand, the ALJ may consider ordering a medical expert to review all the evidence, including the "subsequent evidence" that was not before the earlier medical experts, and to provide a medical opinion addressing Plaintiff's ability to function in the workplace during the alleged period of disability.  The ALJ further may consider ordering Plaintiff to complete a Function Report.

14

**IT IS HEREBY ORDERED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further consideration consistent with this opinion.

An order of remand shall accompany this Memorandum and Order.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of July, 2025.